IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GLENN OLSON,<br><br>                Petitioner,<br><br>   vs.<br><br>EARL HOUSER, Superintendent, Goose Creek Correctional Center,[1]<br><br>                Respondent. | No. 3:17-cv-00111-JKS<br><br>MEMORANDUM DECISION |

Glenn Olson, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Olson is in the custody of the Alaska Department of Corrections and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Olson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On April 4, 2008, Olson was charged with second-degree sexual assault and fourth-degree assault. Following his arraignment, Olson was appointed counsel and pleaded not guilty. He subsequently moved pre-trial to represent himself. After numerous hearings, the trial court ruled that Olson could represent himself and would be permitted to have appointed counsel serve

---

[1] Earl Houser, Superintendent, Goose Creek Correctional Center, is substituted for Shannon McCloud, Superintendent, Wildwood Correctional Center. FED. R. CIV. P. 25(c).

as advisory counsel. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Olson and the procedural background of his case:

*Factual and procedural background*

> Benjamin Samuels, Peter Togiak, and M.B. went to a residence on the evening of March 28, 2008, after consuming a significant amount of alcohol. Glenn Olsen[2] arrived at the residence later that night. He had also been drinking alcohol. During the evening, Olsen told Togiak and Samuels to leave. Olsen and Togiak got into an altercation, and Olsen allegedly punched Togiak. Togiak and Samuels went to a neighbor's house to call the police.
>
> Officers Tracy O'Malley and Michael Barnett and Police Chief Richard Thompson responded to a report of a fight at the residence around 6 p.m. According to the officers, everyone at the house appeared intoxicated, and people were screaming and yelling. M.B. was sitting on the floor, highly intoxicated and unable to talk. Olsen acted belligerently toward the officers. Because no one wanted to file a complaint, the officers left.
>
> Following this first police visit, Olsen again told Togiak and Samuels to leave. Samuels testified that Olsen told him and Togiak that it was his house and that Olsen punched, grabbed, and kicked Togiak.
>
> Samuels testified that he saw Olsen grab M.B. by the hair and pull her to the bedroom. Samuels testified that M.B. tried to tell Olsen not to grab her hair and that he believed that M.B. did not want to go to the bedroom. Togiak testified that he saw Olsen hold M.B. by her hair and rape her in the bedroom. Togiak stated that he and Samuels tried to intercede on M.B.'s behalf, but Olsen fought them. Samuels and Togiak then returned to the neighbor's house and called the police.
>
> The police officers returned to the residence around 6:30 p.m. after receiving the report of a second assault. The officers found Samuels and Togiak outside. Samuels told the officers that he had seen Olsen threaten Togiak with a knife. Togiak completed a citizen's arrest form. The officers heard yelling from inside the residence. Based on the report of the knife, the yelling inside the residence, and the knowledge that M.B. was intoxicated and likely inside the residence, the officers went inside. In a bedroom, the officers found M.B. face down on a mattress with Olsen on top of her. Both M.B. and Olsen were dressed, but their pants and underwear were pulled down, and Olsen was wearing a condom. The officers either picked up Olsen or told Olsen to get off of M.B. M.B. continued to lie on the bed and was not able to coherently converse with the officers.
>
> . . . .
>
> Prior to trial, Olsen filed a motion to suppress all of the evidence the police observed inside the house. Olsen claimed that the police illegally entered the residence where he and M.B. were having sex because they entered without permission and no exigent circumstances justified the police entry. Olsen argued that all of the evidence that the police obtained from the illegal entry should be suppressed.
>
> Superior Court Judge Fred Torrisi conducted an evidentiary hearing on the motion to suppress. Dillingham Police Officer Michael Barnett and Police Chief Richard

---

2     The Court of Appeals' opinion uses the spelling "Olsen" because Olson used that spelling of his name when he litigated the appeal. In this federal proceeding, and in subsequent appeals before the state court, he spells his name "Glenn Olson." *See Olson v. State*, 383 P.3d 661, 661-62 (Alaska Ct. App. 2016).

> Thompson testified at the evidentiary hearing. Officer Barnett testified that when the officers responded to the second report of an assault at the residence, Togiak told the officers that Olsen had kicked him in the ribs, pointed a knife at Togiak, and told Togiak to get out of the house. Samuels also told Barnett that Olsen had a knife. Barnett also testified that while he was talking with Togiak and Samuels, he could hear a male and a female yelling in the residence. He concluded that it was likely that M.B. was in danger. Barnett testified that these facts made it necessary to enter the residence. Chief Thompson testified that he concluded it was necessary to enter the house because he did not see M.B. outside, he believed that M.B. was highly intoxicated, he had heard Togiak say that Olsen had used a knife in an assault, and he heard yelling coming from the house. He also concluded that M.B. was in danger.
>
> Following the presentation of the evidence, Judge Torrisi found the police officers' testimony credible. He concluded that the officers reached a reasonable conclusion that M.B. was in danger and that exigent circumstances justified the police entry.

*Olsen v. State*, No. A-10782, 2013 WL 596524, at *1-2 (Alaska Ct. App. Feb. 13, 2013).

Olson proceeded to a jury trial with advisory counsel. After conducting voir dire *pro se*, Olson indicated that he no longer wished to represent himself and requested that his advisory counsel take over the case. The trial court granted the request, and Olson's attorney handled the case from opening arguments through the verdict.

During trial, M.B. testified that she could not remember the events of that night due to her intoxication and had no memory of the alleged sexual assault, but the State relied on the testimony of other witnesses, as described in the Court of Appeals' factual summary above, to argue that a sexual assault had occurred. Olson testified that M.B. initiated sex and that he believed that she consented to the sexual activity. He also sought to admit the testimony of Jack Allen, a cab driver in Dillingham, who would testify that, when M.B. was intoxicated, she had acted in a flirtatious and seductive manner toward Allen when he had given her a ride in his cab. The trial court concluded that the proposed testimony was not admissible.

At the conclusion of trial, the jury convicted Olson as charged. Following the conviction, Olson moved for a new trial, claiming that his attorney had exhibited racial bias against him and had threatened him in an attempt to coerce him into entering a guilty plea. The superior court found that Olson's claims were not credible and denied the motions.

Olson then sought to represent himself at sentencing. Following a hearing, the trial court

-3-

permitted Olson to present any written or oral legal and factual arguments to the court during sentencing proceedings, and also permitted Olson's attorney to make any arguments. The trial court sentenced Olson to 25 years' imprisonment with 5 years suspended and 15 years' probation on the second-degree sexual assault charge, and a consecutive term of 1 year imprisonment with 180 days suspended and a 5-year probationary period on the fourth-degree assault charge. The trial court also ordered that Olson have no contact with Togiak during the 5-year period of probation imposed on the fourth-degree assault charge and that Olson register as a sex offender for a period of 15 years after his unconditional discharge for the sexual assault charge as well as during his period of probation. After sentencing, Olson filed a motion for a hearing so that he could obtain bail on appeal. The State opposed the motion, arguing among other things that Olson was ineligible for bail pending appeal under ALASKA STAT. § 12.30.040(b)(2) because he had been convicted of a sexual felony.[3] The superior court denied the motion "for the reasons put forth by the state."

Pursuant to Olson's request for self-representation, the trial court allowed Olson to represent himself on appeal. Olson filed a *pro se* brief arguing that: 1) the trial court erred by denying his motion to suppress; 2) the trial court erred by "not granting in propria persona before trial and after;" 3) the trial court abused its discretion by refusing to admit character evidence of the victim; 4) the superior court did not have jurisdiction over Olson; 5) he received the ineffective assistance of counsel; and 6) the trial court abused its discretion in denying his motion for bail pending appeal. The Court of Appeals unanimously affirmed Olson's convictions in a reasoned, unpublished opinion issued on February 13, 2013. *Olsen*, 2013 WL 596524, at *5. It nonetheless remanded Olson's case for the trial court to revisit the bail pending

---

[3] That statute currently provides that a person may not be released if he or she has been convicted of a sexual felony. ALASKA STAT. § 12.30.040(b)(2). As the Court of Appeal explained on direct appeal, "[t]his language was added to the statute by ch. 19, § 11, SLA 2010, and did not become effective until July 1, 2010—after Olsen filed his petition for a bail hearing." *Olsen*, 2013 WL 596524, at *5.

-4-

appeal issue and the ineffective assistance of counsel claim. *Id.* The appellate court concluded that the record was insufficient for the trial court to deny the ineffective assistance claim without holding an evidentiary hearing and that the trial court erred in denying the bail pending appeal issue by relying on amendments to the bail statute that did not become effective until after Olson had filed his petition for a bail hearing. *Id.*

On remand, the superior court held an evidentiary hearing at which Olson testified in support of his allegations. Olson's attorney testified that she did not use racial slurs or exhibit bias against Olson. She also testified that she made no threats to Olson and that she was prepared for his trial. She further testified that, whenever possible, she had another attorney or witness present when communicating with Olson. The superior court found the attorney's testimony credible, concluding that the attorney's performance at trial corroborated her testimony that she was prepared for trial and that Olson's demeanor in court was consistent with the attorney's assertion that communicating with Olson was "challenging." The superior court affirmed its denial of Olson's motion for a new trial. Olson appealed that decision *pro se*, and the Court of Appeals unanimously affirmed in a reasoned, unpublished opinion. *Olsen v. State*, No. A-11941, 2014 WL 4536295, at *2 (Alaska Ct. App. Sept. 10, 2014). Olson filed a *pro se* petition for review in the Alaska Supreme Court, raising his claims that the Court of Appeals erred by: 1) not ruling on the merits of his claim that he was subject to an unlawful arrest; 2) concluding that the superior court acted appropriately in permitting Olson to represent himself; and 3) determining that the superior court was within its discretion in not allowing the proposed testimony of Allen. The Supreme Court summarily denied the petition on September 13, 2013.

While that appeal was still pending, Olson filed a *pro se* petition for post-conviction relief on the ground that much of the evidence against him was the fruit of an allegedly unlawful arrest. The superior court dismissed the petition as barred by the provisions of ALASKA STAT.

§ 12.72.020(a).[4] Olson also filed in the superior court a *pro se* petition for habeas relief which again attacked the convictions on the same ground. The superior court ruled that the habeas corpus action was likewise barred by law. Olson appealed the denial of his habeas petition to the Court of Appeals. *Olson v. State*, 383 P.3d 661, 662 (Alaska Ct. App. 2016). Although he acknowledged that his motion for post-conviction relief was barred and that a criminal defendant is generally not entitled to pursue habeas corpus litigation where a petition for post-conviction relief would be barred, he argued that he was nonetheless entitled to pursue habeas relief because the judgment against him is void. *Id*. at 663. The Court of Appeals rejected Olson's argument that a criminal conviction is void if the prosecution's case was based on evidence obtained in violation of the Fourth Amendment and that, as already decided on direct appeal, the officers' warrantless entry into the residence was lawful under the emergency aid doctrine and thus no Fourth Amendment violation had been shown in any event. *Id.* at 663-64. Olson filed a petition for hearing to the Alaska Supreme Court on the grounds that he was subject to an unlawful arrest and that the lower courts had erred by not permitting him to litigate his claim in a state habeas proceeding. The Supreme Court denied the petition without comment on February 15, 2017.

Olson then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on May 11, 2017. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Olson argues that: 1) his due process rights were violated because he was subject to an unlawful arrest, and the state courts did not rule on his "Illegal Warrantless Misdemeanor Arrest Issue;" 2) the trial court both denied him of his constitutional right to self-representation and erred in granting him *pro se* status; 3) his rights to confrontation and to present a defense were violated when the trial court refused to allow him to

---

[4] That provision provides that post-conviction relief is not available under ALASKA STAT. § 12.72.010 for certain claims, including those based on the admission or exclusion of evidence at trial and claims that were, or could have been but were not, raised on direct appeal of the conviction. ALASKA STAT. § 12.72.010(a)(1), (2).

-6-

present character evidence of the victim; 4) counsel displayed racial bias against him and was ineffective for trying to coerce him into taking a plea deal; and 5) he was convicted based on unlawfully-obtained evidence.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.  Illegal Arrest (Claims 1, 5)

Olson first challenges the trial court's denial of his suppression motion based on an alleged illegal arrest. In Ground 1, Olson avers that his due process rights were violated because the "lower courts did not rule on the Illegal Warrantless Misdemeanor Arrest Issue." He similarly argues in Ground 5 that his conviction was obtained by the use of evidence wrongfully obtained through an illegal warrantless misdemeanor arrest.

As Olson acknowledges, any challenge to the denial of his suppression motion is precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[5]" federal habeas corpus relief will not lie for a claim that evidence

---

[5]  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

-8-

recovered through an illegal search or seizure was introduced at trial. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Alaska provides such an opportunity, AK. R. CRIM. P. 37(c); ALASKA CONST. art. I, § 14. Indeed, the record reflects that the state trial court held a hearing at which defense counsel was afforded the opportunity to be heard, and the underlying claim was briefed before and thoroughly considered by the Alaska Court of Appeals, which issued a reasoned decision rejecting the claim on its merits.

Olson nonetheless argues that his claim may be considered here because he is not barred from seeking relief in a civil 42 U.S. § 1983 suit. But whether he may seek remedy in a future § 1983 federal suit is not at issue with respect to the instant § 2254 Petition, and only his federal habeas claims are properly before this Court. Olson is thus not entitled to relief on either Ground 1 or Ground 5.

B.   Self-Representation (Claim 2)

Olson additionally claims that the state courts violated his right to proceed "in propria persona." Although his Petition is not entirely clear on this point, Olson appears to make contradictory arguments that: 1) the trial court erred in denying him self-representation; and 2) the trial court erred in allowing him to represent himself. The right to counsel guaranteed by the

---

U.S. CONST. amend. IV.

Sixth Amendment "has been interpreted to encompass 'an independent constitutional right' of the accused to represent himself at trial, and thus waive the right to counsel." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007) (quoting *Faretta v. California*, 422 U.S. 806 (1975) (holding that the Sixth and Fourteenth Amendments include a "constitutional right to proceed *without* counsel" even if self-representation is likely to be harmful to the defendant)). Such waiver, however, must be "knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004). While no specific colloquy is required, *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc), the Ninth Circuit has "gleaned a three-factor test from *Faretta*, under which in order to deem a defendant's *Faretta* waiver knowing and intelligent, the district court must insure that he understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-representation," *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008) (citation and internal quotation marks and brackets omitted). "The preferred procedure to ensure that a waiver is knowingly and intelligently made is for the district court to discuss each of the three elements with the defendant in open court," although a trial court's failure to do so "will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *United States v. Balough*, 820 F.2d 1485, 1488 (9th Cir. 1987).

Here, the record reflects that, following his indictment and subsequent arraignment, Olson was appointed counsel and pleaded not guilty. During a trial call status hearing, Olson stated that he was "confused" about his rights and the case and questioned the court's criminal jurisdiction. Through his attorney, he filed a motion for a representation hearing.

At another trial call a week later, Olson's attorney informed the court that Olson wished to represent himself. When questioned by the court, Olson again alleged that the court lacked jurisdiction, and the court indicated that, based on the jurisdiction discussion, it was unsure that Olson was capable of representing himself. The court nonetheless provided Olson with a written advisement regarding his right to waive counsel and the dangers of self-representation, and made

-10-

extensive oral remarks, including the following:

> The defendant has the right to represent himself. The decision by a defendant, however, to exercise this right is almost always a bad one. The cases seem to recognize the right of a defendant to make a bad decision. They permit him to commit judicial suicide by defending himself. The Court has a duty to make sure the defendant who wishes to represent himself is fully aware of the dangers of self-representation and the benefits of having an attorney. Because a decision by a defendant to exercise this right is usually a bad decision and generally so disruptive to the proper function of the judicial processes, that the trial court must make sure that a defendant who chooses to represent himself knows what he's doing. A trial judge should attempt to discourage the defendant from representing himself. That's what I'm doing.

The court then outlined in detail the parts of trial, and explained why, at each part of trial, a defendant would be disadvantaged by representing himself. After the lengthy explanation, the court questioned Olson to understand his reasons for requesting self-representation. The court then suggested that Olson be permitted to act as counsel and file the motions he would like but have his attorney remain as co-counsel to assist him as needed. Olson agreed to have his attorney temporarily act as co-counsel, which the court temporarily permitted.

At the next hearing, however, Olson stated that he would like to litigate the case on his own. The issue was continued until the court heard testimony from Olson's mother, who testified that Olson was not competent to represent himself at trial. The court found that Olson was polite, responsive to court orders, and would not be disruptive, but had legal misapprehensions that gave the judge concern about Olson's ability to represent himself. The court concluded that Olson should not represent himself without the help of counsel, and appointed advisory counsel to assist him.

Roughly three months later, a different judge took over the case for reasons unrelated to the instant motion. After reviewing the prior proceedings and order, the court ruled that Olson could continue to represent him with the assistance of advisory counsel. The court also explained that Olson had the ability to personally file any motions.

At trial, the court permitted Olson to personally conduct voir dire of the jury. The court explained that, although Olson was representing himself, he could ask advisory counsel to take over at any time. Following voir dire, Olson stated that he no longer wanted to represent himself

-11-

and requested that his advisory counsel take over the case. The court granted the request, and advisory counsel handled the case from opening arguments through the verdict.

On direct appeal, Olson argued that he was denied the opportunity to represent himself. But as discussed above and as noted by the Court of Appeal, "the record shows that, when he requested to do so, the court permitted him to represent himself, with advisory counsel." *Olsen*, 2013 WL 596524, at *3. The Court of Appeal's rejection of Olson's denial-of-self-representation-claim is therefore not contrary to, or an unreasonable application of, Federal law.

In the instant Petition, Olson additionally alleges that the trial court should have granted him the right to represent himself without the assistance of advisory counsel. But the Supreme Court has held:

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense.

*McKaslke v. Wiggins*, 465 U.S. 168, 184 (1984).

Moreover, as Olson also concedes, he was not competent to handle the case by himself. Indeed, he does not challenge the court's grant of his request to have advisory counsel take over after voir dire, nor does he allege that he was in any way prejudiced by counsel's handling of the majority of his case in his stead.

Olson also contends that the trial court erred in allowing him to represent himself because the court did not explain the consequences and dangers of self-representation. As described above, however, any such contention is belied by the record. Olson appears to suggest that, when the new judge took over, she should have likewise described the dangers of self-representation. However, Olson cites no cases, much less clearly-established authority of the United States Supreme Court, mandating that the trial court had a duty to reiterate the dangers of self-representation when there was no change in the ruling allowing Olson to represent himself

with the assistance of advisory counsel. Olson is therefore not entitled to relief on this ground in any event.

C.  Character Evidence of Victim (Claim 3)

Olson next challenges the trial court's refusal to admit the testimony of Jack Allen as evidence that the victim was flirtatious when intoxicated. The court conducted a hearing to determine the admissibility of the evidence, at which Allen testified that he had given the victim rides in the taxi he drove in Dillingham. Allen testified that sometimes when he picked up the victim she would be sober, but oftentimes she was intoxicated. According to Allen, when she was sober, she was quiet and polite; when she intoxicated, she would sit with her head resting against Allen and place her hand on his leg or his knee. She would flirt with him and tell him that he was handsome or cute. Allen testified that a "couple times" the victim asked him to have sex with her, which he declined.

On cross-examination, Allen stated that he could not recall if he had given the victim a ride on the day of the charged assault or whether her flirtation had taken place any time before that date. He also testified that other women would often flirt with him when he was giving them rides in his cab. He further conceded that the victim's purportedly drunk and flirtatious behavior may have only happened in the three weeks prior to his testimony, which was given over 15 months after the charged assault occurred.

The court concluded that Allen's testimony, involving the act of flirting with another individual on a handful of occasions over 15 months after the charged crimes, did not establish a relevant character trait of the victim. The court noted that the testimony was not about the victim's conduct prior to the assault and that the conduct at issue occurred only in recent weeks. The court additionally noted that the evidence was not relevant to assessing the victim's credibility because the victim did not remember anything and the prosecution's case was based upon eyewitness observations, DNA testing, and the sexual assault exam. The court alternatively concluded that, even if the victim's actions with Allen had some relevance, the fact

-13-

that they occurred 15 months after the charged assault additionally barred the proffered evidence. The court thus denied Olson's motion to admit Allen's testimony.

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

Federal Rule of Evidence 403, the federal counterpart to Alaska Evidence Code section 403, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009). Alaska employs a similar rule. *See Hawaley v. State*, 614 P.2d 1349, 1361 (Alaska 1980) ("The admissibility of evidence is largely within the trial court's discretion and its rulings will not be overturned on appeal in the absence of an abuse

of discretion.").

Under these guidelines, this Court cannot find that the trial court's denial of Olson's request was an abuse of discretion or unreasonable or contrary to federal law. As the Court of Appeal persuasively reasoned in affirming the trial court's denial:

> The rape shield law does not strictly apply to Olsen's case. But the policy behind the law does. In this case, M.B.'s alleged conduct with Allen occurred more than one year after Olsen's alleged sexual assault. Judge White concluded that M.B.'s alleged flirtatious behavior with Allen more than a year after Olsen's alleged assault had little relevance and that admission of this evidence would be unfairly prejudicial. By contrast, Olsen was able to introduce evidence of M.B.'s allegedly flirtatious actions on the night of the assault. Judge White did not abuse her discretion in refusing to admit evidence of M.B.'s alleged conduct with Allen.

*Olson*, 2013 WL 596524, at *4.

The Court agrees that the proffered evidence was, at best, minimally relevant and of limited probative value, and could inappropriately assail the victim's character. *See Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process."). Moreover, Olson cannot establish that his rights to confrontation were violated by the exclusion. *See Delaware v. Van Arsdell*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits . . . based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."). Olson is thus not entitled to relief on this claim in any event.

D.  Ineffective Assistance of Counsel (Claim 4)

Finally, Olson alleges that he received the ineffective assistance of counsel regarding a plea offer. The record reflects that, 10 months after the jury's verdict, Olson moved for a new trial, alleging that counsel exhibited racial bias against him and threatened him in an attempt to coerce him to accept a plea deal. As previously noted, the trial court initially denied the motion on the merits without conducting an evidentiary hearing. On direct appeal, the Court of Appeals remanded, concluding that the record was insufficient to support the trial court's conclusion

about the credibility of Olson's affidavit without holding an evidentiary hearing. *Olson*, 2013 WL 596524, at *4.

On remand, the court held an evidentiary hearing at which Olson testified in support of his allegations. Olson's attorney also testified that she did not use racial slurs or exhibit bias against Olson. She further testified that she made no threats to induce Olson to accept the State's plea offer and that she was prepared for trial. The superior court found the attorney's testimony credible, concluding that the attorney's performance at trial corroborated her testimony that she was prepared for trial and that Olson's demeanor in court was consistent with the attorney's assertion that communicating with Olson was "challenging." The superior court affirmed its denial of Olson's motion for a new trial, and the Court of Appeals unanimously affirmed on direct appeal. *Olsen*, 2014 WL 4536295, at *2.

The Superior Court conducted an evidentiary hearing and considered all of the evidence Olson presented before finding his allegations not credible. Olson has not alleged that the Superior Court's findings were unsupported by sufficient evidence or that the fact-finding process employed by the Superior Court was defective, and the record demonstrates the contrary. Consequently, this Court cannot second-guess either the state court's findings of fact or its credibility determination. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (holding that "Title 28 U.S.C. § 2254(d) gives federal habeas corpus courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state court, but not by them.")

Because the state court's factual findings were not unreasonable in light of the evidence before it, those findings are entitled to deference. In his Petition, Olson relies upon the same evidence he presented to the Superior Court during the evidentiary hearing on his motion for a new trial. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 867 (9th Cir. 2004) ("The evidence presented by [petitioner] to the district court is the same proof that the state court found was not believable. [The petitioner] did not submit any evidence in the district court to rebut the presumption that the state court's findings of fact and credibility determinations are correct as

required by § 2254(e)(1) . . . . [B]ecause the state court conducted an evidentiary hearing . . ., we are required to defer to the state court's credibility findings."). His conclusory allegations in his Petition fail to overcome the presumption that the state court's findings are correct. *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2000). Olson's ineffective assistance claim therefore must be denied.

E.      Other Pending Motions (Docket Nos. 11, 12, 13, 14, 19, 21, 22)

During the pendency of these proceedings, the parties have filed a number of other motions that are now currently before the undersigned judge and ripe for adjudication.

At Docket No. 11, Respondent filed an opposition to the Petition styled as a "Motion for Summary Adjudication." Because the Court has now decided the Petition in a reasoned opinion, a summary adjudication is unnecessary, and the motion at Docket No. 11 is denied as moot. At Docket No. 12, Olson objected to this Court's granting Respondent an additional extension of time to file an answer to the Petition. Likewise, at Docket No. 13, Olson moved to enforce the briefing deadlines set in the case. Because Respondent has answered the Petition and the case has been decided, the motions at Docket Nos. 12 and 13 are similarly denied as moot. Olson filed a cross-motion for summary judgment at Docket No. 14 and, at Docket No. 19, moved to oppose the Respondent's answer. Because the Court has now adjudicated the Petition and determined that no relief is warranted, the motions at Docket Nos. 14 and 19 are denied.

Olson moves at Docket No. 21 to introduce documentary evidence from his state court case. Respondent does not oppose the request. *See* Docket No. 23. Review of the record indicates that the document at issue, a petition for rehearing dated February 23, 2013, and filed in the Alaska Court of Appeals in Case No. A-10782, is not included in the state court documents lodged by Respondent at Docket No. 10. The Court therefore grants the request and has considered the document in rendering the decision above.

Finally, Olson moves for bail review. Docket No. 22. According to Olson, he is entitled to bail because his § 2254 Petition has been pending for over three months. But while federal

law provides that bail may be allowed even after conviction and pending appeal, it will not be ordered as a matter of right. *McKane v. Durston*, 153 U.S. 684 (1894). The Court has now adjudicated the Petition and determined that habeas relief is not warranted, and the state court judgment against him is not infirm. The motion for bail review at Docket No. 22 must therefore be denied. *Cf. Benson v. California*, 328 F.2d 159, 162 (9th Cir. 1964) ("It would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release. Something more than that is required before we would be justified in granting bail.").

## V. CONCLUSION AND ORDER

Olson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Respondent's Motion for Summary Adjudication at Docket No. 11 and Petitioner's motions at Docket Nos. 12 and 13 are **DENIED** as moot.

**IT IS FURTHER ORDERED THAT** Petitioner's Motion for Summary Judgment at Docket No. 14 and Motion to Oppose Respondent's Answer at Docket No. 19 are **DENIED**.

**IT IS FURTHER ORDERED THAT** Petitioner's Unopposed Motion to Introduce Documentary Evidence from the State Court Proceedings is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Petitioner's Motion for Bail Review at Docket No. 22 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[6] *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

---

[6] Olson requests a certificate of appealability both with respect to his § 2254 claims and as to any related § 1983 claims. Because only the § 2254 claims are properly before the Court in his Petition, the Court has considered only whether a certificate of appealability as to those claims, and determined that none should issue.

-18-

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 14, 2018.

/s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge